## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARK GROVE, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **CIVIL ACTION** |
| **v.** | ) **No. 11-2445-KHV** |
| | ) |
| **ZW TECH, INC.** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

### MEMORANDUM AND ORDER

Mark Grove brings suit against ZW Tech, Inc. on behalf of himself and others similarly situated for unpaid overtime compensation and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq.  This matter is before the Court on the parties' Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release ("Motion To Approve Settlement") (Doc. #20) filed February 7, 2012.  For reasons stated below, the Court overrules the motion.

### I.     Factual Background

On August 9, 2011, plaintiff filed putative collective action claims against defendant for alleged violations of the FLSA and the KWPA.  See Complaint (Doc. #1).  The complaint alleges that in violation of the FLSA and the KWPA, defendant willfully failed to pay straight time and overtime compensation.  See id. at 8-16.  The complaint asserts an FLSA collective class defined as follows:

> All current and former hourly laborers of Defendant who performed pre- and/or post-shift work without compensation at any time during the last three years and/or were not fully compensated for all work performed.

Id. ¶ 30.  After plaintiff filed the complaint, the following individuals consented to become plaintiffs in the action: Gary Hamlett, Justin Dorries, Reagan Roberts, Nathan Oberg, Blake Ford, Jason Brake, Micco Poag, Ronald Swearingen and Troy Tils.  See Notice Of Consent To Join (Doc. #3) filed August 9, 2011; Notice Of Consent To Join (Doc. #6) filed September 8, 2011; Exhibits 1, 2 and 3 to Notice Of Consent To Join (Doc. #9) filed October 3, 2011.[1]

On October 3, 2011, the Court entered a scheduling order which provided a discovery deadline of January 13, 2012.  Scheduling Order (Doc. #11).  Subsequently, the parties made Rule 26(a)(1) initial disclosures and plaintiff propounded interrogatories and requests for production of documents, to which defendant responded.  See Notice Of Service (Doc. #15) and Certificate Of Service (Doc. #16), both filed October 31, 2011; Certificate Of Service (Doc. #8) filed September 21, 2011; Notice Of Service (Doc. #17) filed November 10, 2011.

On November 28, 2011, the parties mediated the case and reached settlement.  See ADR Report (Doc. #18) filed December 1, 2011.  The terms of the settlement are as follows: The parties will request the court to certify a collective action comprised of "all current and former hourly laborers who worked for ZW Tech, L.L.C. as 'independent contractors' from August 8, 2008 through November 28, 2011 (the "Collective Action Members")."[2]  Id. ¶ H.  Defendant represents that 77 individuals are members of the collective class.  Id. ¶ I.  Defendant will contribute $74,188.00 to a settlement fund which includes attorney's fees, costs and service payments to Grove

---

[1]    The notice of consent filed October 3, 2011 lists Grove, Ford and Brake as new plaintiffs, but the attached exhibits show that Poag, Swearingen and Tils consented to join as plaintiffs.  See Notice Of Consent To Join (Doc. #9) filed October 3, 2011 and Exhibits 1, 2 and 3 thereto.

[2]    The settlement refers to defendant as "ZW Tech, L.L.C.," but the lawsuit is brought against "ZW Tech, Inc."  The record does not explain the discrepancy.

and eight original opt-in class members.  <u>Settlement Agreement, Release & Waiver</u> ("<u>Settlement</u>
<u>Agreement</u>") ¶ 4(a), Exhibit 1 to <u>Motion To Approve Settlement</u>" (Doc. #20).[3]  Subject to court
approval, plaintiffs' counsel will receive $18,547.00 – 25 per cent of the total settlement amount –
for attorney's fees and litigation costs.  <u>Id.</u> ¶ 5.  Subject to court approval, Grove and Brake will each
receive service payments of $2,000.00 and seven opt-in plaintiffs – Dorries, Roberts, Oberg, Ford,
Poag, Swearingen and Tils – will each receive service payments of $500.00.[4]  <u>Id.</u> ¶ 6.  Defense
counsel shall administer the settlement.  <u>Id.</u> ¶¶ 4(c), 7(a).  Any portion of the net settlement, <u>i.e.</u> the
total settlement amount minus attorney's fees, costs and service payments, that is not timely claimed
by collective action members, or that has been timely claimed but the collection action member fails
to cash the check within 60 days after its issuance, shall revert back to defendant.  <u>Id.</u> ¶¶ 4(b), 4(d).
The costs of administering the settlement shall be paid from unclaimed monies from the total
settlement amount and shall not reduce the net settlement amount payable to class members.  <u>Id.</u> ¶
7(b).  Upon entry of a final dismissal in the case, all opt-in members shall be deemed to
unconditionally release all claims against defendant relating to hours of work or payment of wages.
<u>Id.</u> ¶ 10.

    Within 21 days of the Court's order approving the settlement, defendant will mail the
proposed notice and claim form to class members.  <u>Id.</u>  ¶ 8(a) and (b) and Exhibits 2 and 3 thereto.

---

[3]     Although the settlement agreement refers to eight opt-in plaintiffs, it appears that nine
individuals joined as plaintiffs (Hamlett, Dorries, Roberts, Oberg, Ford, Brake, Poag, Swearingen
and Tils).  <u>See</u> <u>Notice Of Consent To Join</u> (Doc. #3) filed August 9, 2011; <u>Notice Of Consent To</u>
<u>Join</u> (Doc. #6) filed September 8, 2011; Exhibits 1, 2 and 3 to <u>Notice Of Consent To Join</u> (Doc. #9)
filed October 3, 2011.  The record does not explain the discrepancy.

[4]     The record does not reveal why the settlement provides no service payment to
Hamlett.

To be eligible to receive payment under the settlement, a class member must return the claim form within 30 days. Id. ¶ 8(d). The claim form will state that the person returning it consents to become a plaintiff in the action and authorizes collective action counsel to settle and release all wage and overtime pay claims against defendant. Id. ¶ 8(c).

The record contains differing information regarding the class period and how payment will be determined. As noted, the settlement states that the parties will request collective action certification of hourly laborers who worked for defendant between August 8, 2008 and November 28, 2011. Settlement Agreement ¶ H. The settlement and proposed notice, however, state that payment will be based on work performed between August 1, 2010 and November 28, 2011. Id. ¶ 9; Collective Action Settlement Notice ¶ 5, Exhibit 2 to Settlement Agreement. Regarding amount of payment, the settlement states that each opt-in member's settlement payment will be determined based upon a pro-rata share of the settlement fund, depending on the individual's total hours worked beyond 40 hours in a work week during the period between August 1, 2010 and November 28, 2011. Id. ¶ 9. The proposed notice to class members, however, states that the amount paid under the settlement depends on the amount of compensation paid to the class member between August 1, 2010 and November 28, 2011. Exhibit 2 to Settlement Agreement. The parties do not explain the discrepancies.

The proposed notice states that the amount which defendant will pay to resolve the particular class member's claim is set out on the consent form. See Collective Action Settlement Notice ¶ 5, Exhibit 2 to Settlement Agreement. The proposed consent form, however, does not appear to have a place for information regarding the amount of the opt-in member's settlement amount. See Consent To Join FLSA Collective Action, Exhibit 3 to Settlement Agreement.

Also, if payment is based pro rata, it seems that unclaimed funds would increase class members' pro rata shares of the settlement fund.  Yet the settlement states that unclaimed funds will revert back to defendant.  Id. ¶ 4(d).

## II.   Legal Standards

When employees file suit to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable.  See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cir. 1982).  To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.  See id. at 1354.  The Court may enter a stipulated judgment only after scrutinizing the settlement for fairness. See Peterson v. Mortg. Sources, Corp., 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011).  Further, when a plaintiff has voluntarily assumed the fiduciary role of class representative, the Court must determine "whether the settling plaintiff has used the class action claim for unfair personal aggrandizement in the settlement, with prejudice to absent putative class members."  Id. (quoting Shelton v. Pargo, Inc., 582 F.2d 1298, 1314 (4th Cir. 1978)).  If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  See Lynn's Food Stores, 679 F.2d at 1354.

Additionally, the FLSA entitles prevailing plaintiffs to recover "a reasonable attorney's fee . . . and costs of the action."  See, e.g., Gray v. Phillips Petrol. Co., 971 F.2d 591, 593 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)).  For purposes of attorney's fees, plaintiffs are considered a prevailing party if they succeed on any significant issue in litigation which achieves some of the

benefit they sought in bringing suit.  <u>Jackson v. Austin</u>, 267 F. Supp.2d 1059, 1063 (D. Kan. 2003).

Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA

fee award is mandatory.  <u>Wright v. U–Let–Us Skycap Servs., Inc.</u>, 648 F. Supp. 1216, 1218

(D. Colo. 1986).

Thus, to approve an FLSA settlement, the Court must find that (1) the litigation involves a

bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and

(3) the proposed settlement contains an award of reasonable attorney's fees.  <u>See</u> <u>McCaffrey v.</u>

<u>Mortg. Sources, Corp.</u>, 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011); <u>Lynn's Food</u>

<u>Stores</u>, 679 F.2d at 1354.  Further, when parties settle FLSA claims before the Court has made a

final certification ruling, the Court must make some final class certification finding before it can

approve a collective action settlement.  <u>McCaffrey</u>, 2011 WL 32436, at *3.

**III.    Analysis**

The parties ask the Court to approve their proposed settlement of collective action claims

under the FLSA.  The provisions of the FLSA are not subject to private negotiation or bargaining

between employers and employees because the legislative policies behind it prohibit employees

from waiving their rights to the minimum statutory rates and liquidated damages.  <u>See</u> <u>Lynn's Food</u>

<u>Stores</u>, 679 F.2d at 1352; <u>Dees v. Hydradry, Inc.</u>, 706 F. Supp.2d 1227, 1234 (M.D. Fla. 2010);

<u>Collins v. Sanderson Farms, Inc.</u>, 568 F. Supp.2d 714, 718 (E.D. La. 2008); <u>Brooklyn Sav. Bank v.</u>

<u>O'Neil</u>, 324 U.S. 697, 707 (1945).  So, employees may settle or compromise FLSA back wage

claims in one of two ways.  <u>Lynn's Food Stores</u>, 679 F.2d at 1352.  First, under FLSA Section

216(c), the Secretary of Labor may supervise the payment of unpaid wages to employees.  <u>See</u> <u>id.</u>

at 1353.  Second, in the context of a private action to recover unpaid wages, a district court may

enter a stipulated judgment after scrutinizing the settlement for fairness.  See id. (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 113 n.8 (1946)); Hohnke v. United States, 69 Fed. Cl. 170, 178–79 (Fed. Cl. 2005).  Here, the parties seek court approval of a settlement obtained in the context of a private action to recover unpaid wages.  If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.  See Lynn's Food Stores, 679 F.2d at 1354.

### A.    Final Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated." 29 U.S.C. § 216(b).[5]  In making a final collective action determination, the court considers several factors including (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[6] Thiessen v. GE Capital

---

[5]    In part, Section 216(b) states as follows:

An action to recover [for FLSA violations] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

[6]    The Tenth Circuit has approved a two-step approach to determining whether plaintiffs are "similarly situated" for purposes of FLSA Section 216(b).  Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001); Brown v. Money Tree Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. 2004).  Under this approach, a court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated."  Id. at 1102.  That is, the district court makes a conditional

(continued...)

-7-

<u>Corp.</u>, 267 F.3d 1095, 1103 (10th Cir. 2001); <u>Kaiser v. At The Beach, Inc.</u>, No. 08-CV-586-TCK-FHM, 2010 WL 5114729, at *3 n.6 (N.D. Okla. Dec. 9, 2010).

The parties ask the Court to make a final class certification ruling, but they do not clearly define the collective class which they seek to certify.  <u>See Motion To Approve Settlement</u> (Doc. #20) at 4-6.  The motion for settlement approval states that under the settlement agreement, the collective class includes "hourly laborers who were required to work in excess of 40 hours in a workweek from August 1, 2010 through November 28, 2011, and who worked at Defendant's facilities in Kansas and Illinois."  <u>Id.</u> at 3.  The settlement agreement, however, states that the parties will request certification of a collective class composed of "all current and former hourly laborers who worked for [defendant] as 'independent contractors' from August 8, 2008 through November 28, 2011."  <u>Settlement Agreement</u> ¶ H.  The first definition includes hourly laborers who worked in Kansas and Illinois in excess of 40 hours a week during a 16-month period, <u>i.e.</u> from August 1, 2010 to November 28, 2011.  The second definition includes all hourly laborers who worked as independent contractors during a three-year period, <u>i.e.</u> from August 8, 2008 to November 28, 2011. In light of these inconsistencies, the Court cannot determine the appropriate class definition or make a final determination as to whether the action should proceed as a collective action.

---

[6](...continued)
determination whether a collective action should be certified for purposes of sending notice of the action to potential class members.  <u>See</u> <u>Brown</u>, 222 F.R.D. at 679.  For conditional certification at the notice stage, the court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  <u>Thiessen</u>, 267 F.3d at 1102 (quotations and citations omitted).  The standard for certification at the notice stage is a lenient one that typically results in class certification.  <u>See</u> <u>Brown</u>, 222 F.R.D. at 679.  At the conclusion of discovery (often prompted by a motion to decertify), the court makes a second collective action determination using a stricter standard of "similarly situated."  <u>Thiessen</u>, 267 F.3d at 1102-03.  Here, the parties settled the case before plaintiffs requested conditional certification.  Accordingly, the Court proceeds directly to the final collective action determination.

**B.      Proposed Settlement**

Even if the Court determined that the case should proceed as a collective action, the parties do not provide information sufficient for the Court to approve the proposed settlement.  To approve an FLSA settlement, the Court must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned.  See Lynn's Food Stores, 679 F.2d at 1354.

**1.      Bona Fide Dispute**

The parties requesting review of an FLSA compromise must provide information sufficient for the Court to determine whether a bona fide dispute exists. McCaffrey, 2011 WL 32436, at *4.  To meet this obligation, the parties should provide the following information: (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

Regarding the first factor, i.e. the nature of the dispute, the parties state that defendant contends that the hourly laborers were independent contractors while plaintiffs contend that they were employees covered by the FLSA.  See Motion For Settlement Approval (Doc. #20) at 5.  The parties apparently agree that defendant paid an hourly wage for work performed but did not pay one and a half times the regular pay for hours worked in excess of 40 hours per week.  See id.

Regarding the second factor, i.e. a description of defendant's business and the type of worked

performed by the employees, the parties provide no information regarding the type of business which defendant is engaged in.  Regarding work performed, the parties state that each worker worked as an hourly laborer as follows:

> While day to day projects varied, each worker was involved in the manufacture of Defendant's operational facilities in Kansas City, Kansas.  Each worker performed manual labor on constructing the facility, and worked similar hours.  A small subset of the group performed some work in Illinois, disassembling a manufacturing facility for transport and re-assembly in Kansas.

Id.

Regarding the third factor, i.e. defendant's reasons for disputing plaintiffs' right to overtime, the parties state that defendant contends that each individual was an independent contractor.  Id.  The parties do not state the basis for defendant's contention.

Regarding the fourth factor, i.e. plaintiffs' justification for the disputed wages, the parties provide no justification for plaintiffs' assertion that they are employees instead of independent contractors.  See id.

Regarding the fifth factor, i.e. each party's estimate of the number of hours worked and the applicable wage, the parties do not indicate whether they dispute the computation of wages owed.  See id.

On this record, the parties have failed to provide information regarding (1) the type of business which defendant is engaged in; (2) the reasons why defendant contends that plaintiffs worked as independent contractors; (3) plaintiffs' justification for their assertion that they were employees as opposed to independent contractors; and (4) whether the parties dispute the computation of wages owed and, if so, each party's estimate of the number of hours worked and the applicable wage.  The Court therefore cannot determine whether a bona fide dispute exists.

-10-

## 2.        Fair And Reasonable

To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), Fed. R. Civ. P., the Court considers (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.[7] <u>McCaffrey</u>, 2011 WL 32436, at * 5.  The Court also must consider factors relevant to the history and policy of the FLSA, including (1) defendants' business; (2) the type of work performed by plaintiffs; (3) the facts underlying plaintiffs' reasons for justifying their claims; (4) defendants' reasons for disputing plaintiffs' claims; (5) the relative strength and weaknesses of plaintiffs' claims; (6) the relative strength and weaknesses of defendant's defenses; (7) whether the parties dispute the computation of wages owed; (8) each party's estimate of the number of hours worked and the applicable wage; and (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.  <u>Id.</u>

The parties's motion addresses the Rule 23(e) factors, but it does not provide sufficient information regarding the FLSA factors.  As noted, the parties do not provide information regarding (1) the type of business which defendant is engaged in; (2) the reasons why defendant contends that plaintiffs worked as independent contractors; (3) plaintiffs' justification for their assertion that they were employees as opposed to independent contractors; and (4) whether the parties dispute the computation of wages owed and, if so, each party's estimate of the number of hours worked and the

---

[7]        The factors for settlement approval under Rule 23(e) provide a general framework for the Court's determination whether an FLSA settlement is fair, but they are not determinative. <u>See</u> <u>McCaffrey</u>, 2011 WL 32436, at * 5.

applicable wage.  In addition, the parties provide no information regarding the relative strength and weaknesses of plaintiff's claims, the relative strength and weaknesses of defendant's defenses or the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.

Furthermore, the record contains unexplained discrepancies regarding the time period for which plaintiffs have wage claims and how payment will be determined under the settlement.  The complaint and settlement agreement assert class definitions which encompass wage claims for three years.  See Complaint (Doc. #1) ¶ 30 (defining class to include laborers who worked during last three years); Settlement Agreement ¶ H (parties will request certification of class composed of laborers who worked from August 8, 2008 through November 28, 2011).  The settlement agreement and notice to collective action members, however, state that opt-in members will receive payment based on hours worked during a 16-month period, i.e. from August 1, 2010 to November 28, 2010.  See Settlement Agreement ¶ 9; Collective Action Settlement Notice ¶ 5, Exhibit 2 to Settlement Agreement.  The parties do not explain why recovery under the settlement is for a shorter time period than that asserted in the complaint and settlement class definitions.

Also, it is unclear how the parties will calculate the amount of recovery.  As noted, the proposed notice states that payment will be based on compensation paid, but the settlement states that payment will be based pro rata on the number of overtime hours worked.  It is also unclear whether collective class members will receive notice of the amount of money that they will receive if they join the settlement.  The proposed notice states that the amount which defendant will pay to resolve the particular class member's claim is set out on the consent form.  See Collective Action Settlement Notice  ¶ 5, Exhibit 2 to Settlement Agreement.  The proposed consent form, however,

does not appear to have a place for that information.  See Consent To Join FLSA Collective Action,

Exhibit 3 to Settlement Agreement.  The Court believes that some notice regarding the amount of

recovery - or at least potential range of recovery – is appropriate.

On this record, the Court cannot determine whether the proposed settlement is a fair and

reasonable compromise of plaintiffs' claims.

### C.      Proposed Service Payments

The proposed settlement provides service payments of $2,000.00 each to Grove and Brake,

and service payments of $500.00 each to Dorries, Roberts, Oberg, Ford, Brake, Poag, Swearingen

and Tils.  Settlement Agreement ¶ 6.  The parties provide little to no information regarding the

nature of each individual's involvement and the number of hours which he or she has invested in the

case.[8]  Without such information, the Court cannot determine whether the proposed service

payments are fair and reasonable.  See, e.g., McCaffrey, 2011 WL 32436, at *5; Bruner v.

Sprint/United Mgmt. Co., No. 07-2164-KHV, 2009 WL 2729911, at *3 (D. Kan. Aug. 25, 2009).

### D.      Proposed Attorney's Fees

The proposed settlement provides payment of $18,547.00 – 25 per cent of the total settlement

amount – to plaintiffs' counsel, Michael Hodgson of The Hodgson Law Firm, L.L.C. and Mark A.

Jess, John Ziegelmeyer III and Christie Sherman-Jess of the Employee Rights Law Firm.  Counsel

seek payment based on a percentage of the common fund.  They provide no information regarding

---

[8]      The parties state that Grove and Brake initially contacted plaintiffs' counsel and provided much of the documentation necessary for counsel's investigations leading up to filing the case. Motion For Settlement Approval (Doc. #20) at 22.  They state that the other individuals chose to join the lawsuit shortly after its inception and confirmed and supplemented evidence related to their claims.  Id.  The parties assert that their "courage and faith in the process should not go unnoticed."  Id.

the amount of time which they have spent on the matter.

With regard to attorney's fees in common fund cases, the Tenth Circuit applies a hybrid approach which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar.[9] See Gottlieb, 43 F.3d at 483.  The percentage reflected in a common fund award must be reasonable and, as in statutory fee cases, the district court must articulate specific reasons for fee awards demonstrating the reasonableness of the percentage and thus the reasonableness of the fee award. See Brown v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir. 1988).  Here, counsel provide no information regarding the amount of time spent or a reasonable hourly rate for each attorney.  Moreover, because the proposed settlement provides a possibility that some of the settlement fund could revert back to defendant, the Court cannot determine a reasonable attorney's fee based on a percentage of the common fund until after the time for reversion has expired.  On this record, the Court cannot determine whether the amount of proposed attorney's fees is reasonable.

### E.      Conclusion

In sum, the record does not support a finding that (1) final certification of a collective action is appropriate under FLSA Section 216(b) or (2) the proposed settlement is fair and reasonable.

---

[9]       The lodestar method looks to prevailing market rates in the community and roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. See Perdue v. Kenny A. ex rel. Winn, 130 S. Ct.  1662, 1672 (2010).

In Perdue, the Supreme Court found that a fee determined by the lodestar method may be enhanced only in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.  See id. at 1673-75.  The Supreme Court did not address whether a court may approve reasonable attorney's fees based on a percentage of the common fund.  In any event, even if the Court applied a common fund approach, the time and labor required are relevant to determining whether the fee is reasonable. See Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994).

**IT IS THEREFORE ORDERED** that the parties' <u>Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release</u> filed February 7, 2012 be and hereby is **OVERRULED.**

Dated this 17th day of May, 2012 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge