## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARK GROVE,** ) | |
| **on behalf of himself and all others similarly** ) | |
| **situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 11-2445-KHV** |
| **ZW TECH, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Mark Grove brings suit against ZW Tech, Inc. on behalf of himself and all others similarly situated, seeking unpaid overtime compensation and related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Kansas Wage Payment Act, ("KWPA"), K.S.A. § 44-313 et seq.  This matter is before the Court on the parties' Supplemental Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release (Doc. #22) filed August 17, 2012.  For the following reasons, the Court sustains the motion.

### Factual And Procedural Background

On August 9, 2011, plaintiff brought a putative FLSA collective action on behalf of himself and all other similarly situated employees who regularly worked more than 40 hours per week and were not properly compensated for overtime hours.  Complaint (Doc. #1) at ¶¶ 44-45.  With respect to the FLSA claim, the complaint alleges that defendant improperly treated plaintiff as non-exempt under the FLSA, and therefore did not properly compensate plaintiff and similarly situated employees for overtime.  Id. ¶¶ 46-48.  After plaintiff filed suit, nine others joined as party plaintiffs – Gary Hamlett, Justin Dorries, Reagan Roberts, Nathan Oberg, Blake Ford, Jason Brake, Micco

Poag, Ronald Swearingen and Troy Tils.  Notice Of Consent To Join (Doc. #3) filed August 9, 2011;

Notice Of Consent To Join (Doc. #6) filed September 8, 2011; Notice Of Consent To Join (Doc. #9)

filed October 3, 2011.

On November 28, 2011, the parties settled the case in mediation.  ADR Report (Doc. #18)

filed December 1, 2011.  In accordance with the settlement agreement, the parties now ask the Court

to certify a collective action consisting of "all current and former hourly laborers who worked for

ZW Tech, L.L.C. as 'independent contractors' from August 8, 2008 through November 28, 2011."

Settlement Agreement, Release & Waiver (Doc. #20-1) filed February 2, 2012 ¶ H; see also

Supplemental Motion (Doc. #22) at 4.[1]  Defendant represents that the class includes 77 individuals.

In exchange for plaintiffs releasing claims pertaining to hours of work or payment of wages,

including the KWPA claim, defendant will pay $74,188.00 for plaintiffs and all opt-in class

members.  This sum includes service payments to plaintiffs and all attorney fees and costs.  Subject

to court approval, Grove and Brake will each receive a $2,000 service payment; Dorries, Roberts,

Oberg, Ford, Poag, Swearingen and Tils will each receive a $500 service payment.  The agreement

does not give Hamlett a service payment.

If any amount is not timely claimed, or the settlement check is not cashed within 60 days,

such funds will revert back to defendant.  The agreement provides $18,547 in attorney fees and

costs, which amounts to 25 per cent of the total settlement amount.  These fees and costs reduce the

net settlement amount payable to plaintiffs and opt-in class members.

As required by the FLSA, the parties now ask the Court to grant final collective action

--------

[1]     Based on the applicable three-year statute of limitations, the class includes workers dating back to August 8, 2008 even though defendant did not start business operations until August 1, 2010.  See Supplemental Motion (Doc. #22) at 2, 4.

certification and approve the settlement agreement. Plaintiffs ask the Court to approve their unopposed request for attorney fees and costs.

**Analysis**

**I.     Final FLSA Collective Action Certification**

Where parties settle FLSA collective action claims before the court has made a final collective action ruling, the court must make some final class certification finding before it can approve the settlement. McCaffrey v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 32436, at *2 (D. Kan. Jan. 5, 2011) (citing Burkholder v. City of Fort Wayne, 750 F. Supp.2d 990, 993 (N.D. Ind. 2010)); Murillo v. Pac. Gas & Elec. Co., No. CIV. 2:08-1974 WBS GGH, 2010 WL 2889728, at *2 (E.D. Cal. July 21, 2010)).  Under the FLSA, "similarly situated" employees may maintain a collective action against an employer for violating the Act.  29 U.S.C. § 216(b).  The FLSA does not, however, define the phrase "similarly situated."  Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).  When making a final collective action certification, the Court considers (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.  McCaffrey, 2011 WL 32436 at *2; see Thiessen, 267 F.3d at 1102-03.

Here, each plaintiff and member of the putative class worked as an hourly laborer for defendant.  Although day-to-day projects varied, each laborer worked similar hours performing manual labor in constructing defendant's operational facilities in Kansas City, Kansas.  A small subset of the class performed some work in Illinois disassembling a manufacturing facility for transport and reassembly in Kansas.  All laborers in the class consistently worked more than 40

hours per workweek and defendant did not pay any of them overtime.  The similarity of the laborers'

hours and work favors finding them similarly situated.

Defendant's primary defense is that the laborers were independent contractors – not
employees covered by the FLSA.  Given the similarity of the laborers' work, this defense would
apply equally to all of them.  This too favors finding plaintiffs and putative class members similarly
situated.

The record does not indicate any fairness or procedural considerations that would weigh
against final collective action certification.  The Court therefore certifies a collective action
consisting of "all current and former hourly laborers who worked for ZW Tech, L.L.C. as
'independent contractors' from August 8, 2008 through November 28, 2011."  Settlement
Agreement, Release & Waiver (Doc. #20-1) filed February 2, 2012 ¶ H.

## II.    Settlement Approval

When employees sue their employer to recover overtime compensation under the FLSA, the
parties must present any proposed settlement to the district court for review and a determination
whether the settlement is fair and reasonable.  Gambrell v. Weber Carpet, Inc., No. 10-2131-KHV,
2012 WL 162403, at *2 (D. Kan. Jan. 19, 2012) (citing Lynn's Food Stores, Inc. v. United States,
679 F.2d 1350, 1353 (11th Cir. 1982)).  If the settlement reflects a reasonable compromise of issues
actually in dispute, the Court may approve the settlement to promote the policy of encouraging
settlement of litigation.  Id. at *2 (citing Lynn's Food Stores, 679 F.2d at 1354); McCaffrey, 2011
WL 32436, at *3.

To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona
fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the

proposed settlement contains an award of reasonable attorney fees.  See McCaffrey, 2011 WL 32436, at *2.

### A       Bona Fide Dispute

A bona fide dispute exists as to whether plaintiffs and opt-in class members are entitled to recover unpaid overtime for time worked over 40 hours per workweek.  Defendants contend that the laborers were independent contractors and therefore not entitled to overtime under the FLSA.  The parties have described this dispute in detail.  See Supplemental Motion (Doc. #22) at 5-20.  Having reviewed the parties' contentions, the Court finds that a bona fide dispute exists.

### B.       Fair And Equitable Settlement

To determine whether a proposed settlement under Section 216(b) is fair and equitable to all parties, courts have regularly applied the same fairness factors as apply to a proposed class action settlement under Rule 23(e), Fed. R. Civ. P., which include (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.  Gambrell, 2011 WL 162403, at *3 (citing McCaffrey, 2011 WL 32436, at *5).

The Court also considers various contextual factors pertinent to the statutory purpose of the FLSA, some of which overlap with the factors listed above.  These "contextual" factors include (1) defendant's business, (2) the type of work performed by plaintiffs, (3) the facts underlying plaintiffs' reasons for justifying their claims, (4) defendant's reasons for disputing plaintiffs' claims, (5) the relative strength and weaknesses of plaintiffs' claims, (6) the relative strength and

-5-

weaknesses of defendant's defenses, (7) whether the parties dispute the computation of wages owed, (8) each party's estimate of the number of hours worked and the applicable wage and (9) the maximum amount of recovery to which plaintiffs claim they would be entitled if they successfully proved their claims.  McCaffrey, 2011 WL 32436, at *5 (citing Dees v. Hydradry, Inc., 706 F. Supp.2d 1227, 1243-44 (M.D. Fla. 2010)).

As noted above, questions of law and fact exist with respect to plaintiffs' FLSA claim and defendant's independent contractor defense.  The parties acknowledge that these unresolved legal and factual issues place the ultimate outcome of the litigation in doubt.  Moreover, the settlement agreement is the product of arms-length negotiations during mediation with an experienced mediator. The Court sees no evidence of fraud or collusion.

With respect to the probability of plaintiffs' success on the merits, and the amount of settlement in relation to potential recovery, plaintiffs' counsel states that "it is highly unlikely that the recovery of any settlement would increase as a result of protracted litigation," and absent a settlement, "any such compensation may not occur until after years of litigation and appeals" – or not at all. Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release (Doc. #20) filed February 7, 2012 at 8-9.  Having reviewed the parties' submissions, the Court agrees.  Indeed, defendant's defense seems quite strong.

Under the FLSA, plaintiffs and putative class members would be entitled to liquidated damages in addition to back pay if they prevailed at trial.  As part of the settlement, defendant has agreed to pay each worker the full amount each worker would be owed for overtime, plus an additional amount as liquidated damages.  The parties describe the calculation of settlement payments as follows:

Under the terms of the settlement, if an individual chooses to participate in the settlement by returning a claim form, he or she will receive his or her full back wages for overtime worked, and an additional amount as liquidated damages. This additional amount will be distributed based on the individual's hours worked. For example, if John Smith earned 5% of the total wages paid to the putative class during the claim period and was paid $15.00 per hour while performing services for the Defendant, Mr. Smith will receive his full back wages at $7.25 per hour for overtime, plus 5% of the liquidated damages fund. Likewise, if Jane Doe earned 7% of the total wages paid to the putative class during the claim period, and was paid $10.00 per hour while performing services for the Defendant, Ms. Doe will receive her full back wages at $5.00 per hour for overtime, plus 7% of the liquidated damages fund. Distributions thus, will be pro-rated, based on that employee's hours worked and wages earned.

Supplemental Motion (Doc. #22) at 3. Any unclaimed monies will revert to defendant because each putative class member who does not opt in maintains his or her claim.

In addition to unpaid overtime, and an additional amount in liquidated damages, Grove and Brake will each receive a $2,000 service payment; Dorries, Roberts, Oberg, Ford, Poag, Swearingen and Tils will each receive a $500 service payment. The parties do not explain, however, why the agreement does not give Hamlett a service payment. For substantially the reasons stated in the parties' supplemental brief, the Court finds that these service payments are reasonable, except with respect to the failure to give Hamlett the same $500 service payment that similarly situated plaintiffs will receive. See Supplemental Motion (Doc. #22) at 20-25.

The total settlement amount, not including attorney fees and service payments, is $48,141. In light of all the circumstances, and for the reasons discussed above, the Court is prepared to approve this settlement subject to a satisfactory explanation for not giving Hamlett a service payment. On or before October 19, 2012, the parties shall explain in writing why the settlement agreement does not give Hamlett a service payment.

### III.    Attorney Fees And Costs

The FLSA also requires that a settlement agreement include an award of "a reasonable attorney's fee . . . and costs of the action." See 29 U.S.C. § 216(b); Gambrell, 2012 WL 162403, at *3. Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory. Gambrell, 2012 WL 162403, at *3 (citing Wright v. U-Let-Us Skycap Serv., Inc., 648 F. Supp. 1216, 1218 (D. Colo. 1986)).

When a common fund is created by settlement, courts have applied one of two methods in determining reasonable attorney fee awards: a percentage of the fund or the lodestar method. See Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995). The lodestar is the number of hours worked multiplied by prevailing hourly rates. See Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1669 (2010). The Tenth Circuit applies a hybrid approach. Gottlieb v. Barry, 43 F.3d 474, 483 (10th Cir. 1994). The Court also considers the 12 factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Rosenbaum, 64 F.3d at 1445. Although the "lodestar determination is primary," and the Johnson factors "usually . . . subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d 1098, 1103-04, the Court nevertheless considers them separately, see Peterson v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 3793963, at *6-7 (D. Kan. Aug. 25, 2011).

Under the agreement, defendant will pay $18,547 in attorney fees and costs, which amounts to 25 per cent of the total settlement amount. To support their agreed attorney fees, the supplemental brief states that attorney Mark Jess spent 12 hours and attorney Michael Hodgson spent 70 hours on this case. Jess states that his hourly rate is $450. Hodgson states that his hourly rate is $325. The

-8-

supplemental brief also mentions John Zieglemeyer, but does not state how many hours he spent on the case.  At these hourly rates, the parties' lodestar calculation, i.e. the number of hours worked multiplied by prevailing hourly rates, is $28,150.  See Perdue, 130 S. Ct. at 1669.

Although the hourly rates for Jess and Hodgson are much higher than rates which the Court has recently found appropriate for lawyers handling FLSA cases, see Peterson, 2011 WL 3793963, at *11 (citing Wilhelm v. TLC Lawn Care, No. 07-2465-KHV, 2009 WL 57133 (D. Kan. Jan. 8, 2009)), they seek roughly $10,000 less than the lodestar amount they calculated.  The actual amount which plaintiffs seek – $18,547 – is in line with the fee amounts the Court has found to be reasonable.  The Court finds that the lodestar method indicates that plaintiffs' fee request is reasonable.  Moreover, for substantially the reasons stated in the parties' initial motion for settlement approval, 25 per cent of the common fund is a reasonable percentage.  See Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release (Doc. #20) at 14-17.

The Court also considers whether the fee is reasonable under the 12 Johnson factors: (1) time and labor required, (2) novelty and difficulty of question presented by the case, (3) skill requisite to perform the legal service properly, (4) preclusion of other employment by the attorneys due to acceptance of the case, (5) customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) "undesirability" of the case, (11) nature and length of the professional relationship with the client and (12) awards in similar cases.  Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995).  With respect to these factors, plaintiffs' lead counsel alone spent more than 80 hours on this case.  The case involved fact-intensive issues regarding whether the laborers in question were employees or independent contractors.  Addressing

these issues required some skill and expertise by plaintiffs' counsel who are experienced in handling FLSA cases and took this case on a contingency fee.  Moreover, the fee that plaintiffs request is not out of line with fees awarded in other FLSA cases.  For these reasons and substantially the reasons stated in plaintiffs' initial and supplemental requests for settlement approval, the Court sustains the parties' motion for settlement approval.  See Supplemental Motion (Doc. #22); Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release (Doc. #20).

**IT IS THEREFORE ORDERED** that the parties' Supplemental Motion & Supporting Suggestions To Approve Stipulation Of Settlement Agreement And Release (Doc. #22) filed August 17, 2012 be and hereby is **SUSTAINED in part**.  The Court therefore certifies a collective action consisting of "all current and former hourly laborers who worked for ZW Tech, L.L.C. as 'independent contractors' from August 8, 2008 through November 28, 2011."  Further, the Court is prepared to approve this settlement subject to a satisfactory explanation for not giving Gary Hamlett a service payment.  **On or before October 19, 2012, the parties shall explain in writing why the settlement agreement does not give Hamlett a service payment.**

Dated this 15th day of October, 2012 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge